AVERY DENNISON CORPORATION. Mr. Willingham, whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Jim Willingham. I'm from San Antonio and I represent the appellant for USPPS Ltd. I'd like to start off by raising one hypothetical which I think clearly frames the issue. Assume that I live in Texas, I go to a Texas attorney, and I tell the Texas attorney I want him to pursue a claim against XYZ Corporation. It could be for any type of case. Two years go by, I don't really like the way the attorney doesn't return my phone calls, I have a little trouble communicating with him, and the attorney calls me in at the end of about two years and says, Mr. Willingham, the other side has filed a thing called a summary judgment motion, and it's a killer. Your case is dead. And I tell him, I said, you know, I think you've done a sorry job. I really think you've done a sorry job. He says, well, I'm sorry you feel that way, but I've done everything possible to pursue your claim, and you can get another attorney if you want to, but I think it would be a waste of your time and money. And I storm out. I go back to my life, and about three years later, I'm reading in my local paper, and my Texas attorney has been indicted, both criminally and pursued by the Texas State Bar for taking bribes from XYZ Corporation. When does my cause of action start to run for statute of limitations purposes? I knew I was injured three years ago when my case was dead, but I've just discovered that he's taken bribes, and I want to sue him for fraud. I want to sue him every way possible. Now, I think that's exactly what we have in this case. A simple issue. When you have a cause of action in Texas, does the statute of limitations start to run on fraud and breach of fiduciary duty when you discover the injury, or does it start when you discover the wrongful conduct? Believe me, I am very impressed with everything I see here today, and you can rest assured I know nothing about the patent stuff that's going on, but I'm here to try to summarize what I feel is the Texas law, and Texas law divides up two ways you can have deferral. There's two of them. The first one is when the injury is inherently undiscoverable, and that one can apply to, it actually applies to any case, but it certainly applies to two-year statute of limitations cases like negligence and malpractice and things of that nature. You discover your injury, you've got two years to find out whether you've got a cause of action. All of the cases that are cited in all of the briefs that talk about inherently undiscoverable injury do not apply to this case. This is a fraud and breach of fiduciary duty case. Let me ask you a few questions, because your hypothetical is interesting. Unfortunately, those aren't the facts of this case. Okay. Tell me what they're different about. Well, as the red brief points out, there are an awful lot of places in which you had an understanding of at least the relationship between Renner and Avery, and you had your own counsel telling you up front that you should get your own counsel, that you should have independent counsel? Well, that's severely contradicted in the summary judgment evidence by my client. He says he doesn't ever remember his counsel ever saying that. In fact, it's described as being by the other counsel, the Fulbright-Grosky lawyer, says he remembers seeing a charitable event. Overdrinks thinks he said something like that. I think that's, they can argue it, but it's certainly a fact matter. I certainly think that is a factual issue. But for summary judgment purposes, he's denied ever remembering. He never heard it. Never heard anybody saying that to him. So, for summary judgment purposes. Let me ask you to make sure I'm clear. Are you agreeing or disagreeing that the standard is whether or not your client knew or should have known of the facts with reasonable diligence? With reasonable diligence, rising to the level. And the discovery of the exact causes. Yes, rising to, yes. I think the standard is. Okay, and that's the standard that the district court applied here, is it not? I mean, at least it gave lip service to that standard, right? It said it was a lie. But I don't disagree that the standard for a fact question is, when would a reasonable person have discovered the wrongful acts rising to the level of fiduciary duty? Now, the interesting thing on that, there's no doubt that was the issue framed in the first appeal. The Fifth Circuit just said, based upon the complaint, we don't find that the defendant discovered the wrongful conduct rising to the level of fiduciary duty and fraud. So, a long pleading, a lot of evidence. The court didn't find any of the factual evidence. I tried to go through it. They didn't find anything wrong with the factual evidence as stated in the pleadings. So, they had to come up with something new. Summary judgment standard. There had to be something new. Well, at the pleading stage, they assume that everything you say is accurate, and everything you say in your complaint, that's a very different animal than a jury judgment. No, the magistrate said in her report that if it's inconsistent, she would point it out. And that's what I'm saying. The magistrate says, review the complaint. Most, in fact, even says many of the factual assertions are correct, and they will point out any that are not. Well, I never find any that are not. So, that's the reason I say from the record that you have, I don't think the magistrate ever found one factual assertion in the complaint inconsistent with the summary judgment evidence. So, the only thing new that I see is the million-dollar fax. I think it was a million-dollar fax. That's February 2003. That's the only thing you say that's different than what you alleged in your complaint? Well, it's not different. I just didn't put it in my complaint. It's not that it's not different. The million-dollar fax is exactly what the court went through page after page talking about. In fact, the court actually said, we actually agree that saying mismanagement would not be breaching the judiciary fraud, but when you combine it with the million-dollar fax and the, what is it, continuous pattern of delays, that's enough. Well, interestingly then, when Apolli, excuse me. There's a whole host of exchanges between July of 2002, actually May of 2002, and all the way up to the million-dollar fax, where there's plenty of references to Avery telling you to get your own counsel, you saying you want your own counsel, your client complaining about Avery's handling of the patent processing. Are you saying that none of those things happened? You'd have to really let me know because some of them are confusing. The court made several references to e-mails that talk about some of these matters, but those are not things that my client got. Those were communications that were discovered in the discovery in what was Beasley 1. That's the first case. So you have to be careful. The court makes references, and if you point out one to me, I'll tell you whether it's, but they didn't talk about a bunch of e-mails back and forth between Avery and Renner Auto and act like Mr. Beasley knew about it. We didn't discover any of this until we filed a lawsuit a couple of years later. But you're also raising so many fact questions. That's what summary judgment is not about. Summary judgment is, boy, there's no way a jury would believe his story. He came in to see me. They had terminated the supply agreement. They told him they weren't paying any royalties. I told him the supply agreement wasn't worth the papers written on, and in passing he mentions that he used their lawyers. I said, their lawyers for what? For the patent prosecution. I said, well, there's conflict of interest there. They didn't know what a conflict of interest is, and you don't put a burden on the client. You sue. We sued for negligence, and we sued for conflict of interest. We then got all the discovery and found out about all the other things that they didn't even consider a client, and for the first time in being a petitioner. So you're saying that under Texas law and Fifth Circuit interpretation of Texas law, that what you have to do is actually go to a lawyer and find out what the legal cause of action is before you know that you've been harmed? Not at all. They point out in their brief, in fact, the magistrate even says, short of the lawyers telling them, hey, we, I'm trying to think of a polite word, we missed you. We've never even considered your client. How would you ever find out? And you know what? That's really sad. That's sad. The truth of the matter is, most clients would never find out about this, and I agree with you. This case, they happened to go to a lawyer who believed in their cause, filed a lawsuit, this lawsuit only started out as a conflict of interest, only then to find out, and it took a motion to compel, it took a motion to compel to even get all these documents that actually have a lawyer saying, lawyer saying to Avery Dennison, hey, what do I do about these things? I'm worried about malpractice. Do you think that the normal client would ever normally discover that? They wouldn't. And your observation is, I really find it sad. Because you are right. Most clients won't find out about this. This client did, though. And this client did not find out about it until after April, I get my years mixed up, April 20 of 2004. I'm going to reserve the remainder of your rebuttal. Thank you. Thank you. So you're Mr. Harkin? Yes. Okay, please select your time. You're taking ten minutes and your friend is taking five. That is correct, Your Honor. May it please the Court, I represent Avery Dennison, and I will address the limitations portion, and counsel for Renner will address the causation issues. As a preliminary matter, the patent application at issue in this case, Renner Auto took over the prosecution of that patent in May of 2001. They filed a supplemental IDF because they discovered additional prior art in the file and they took it over. In July 2001, the PTO issued its notice of allowance. In August of 2001, we paid the issue fee. Did Avery consider Renner Auto its counsel at this time? Yes. Did Avery Dennison? Yes. Avery Dennison considered Renner Auto its counsel. And had used them and had talked to Mr. Beasley about the fact that Renner Auto was their counsel. And Avery Dennison agreed to assume prosecution of the patent application. Was it your understanding that Renner never represented Mr. Beasley during this process? No, I understood that they represented Mr. Beasley. There was a power of attorney that was executed by Mr. Beasley to Renner Auto and he was representing Mr. Beasley, or Renner Auto was representing Beasley at the PTO. But the issue really became when the PTO withdrew the patent from issuance pursuant to a quality review process in April of 2002. It was at that point the PTO withdrew it from issuance as a surprise, as a random process. They found other prior art. They reexamined, I mean they opened the prosecution and they cited some invalidated prior art. They issued an office action. And it was at that point, as the court was asking about, almost immediately in May of 2002 that Mr. Beasley and his company USPPS became unhappy with Renner Auto and Avery Dennison. And at that point he complained that Avery Dennison was prohibiting or inhibiting his communications with Neil Deshaies at Renner Auto. And it was clear that they didn't trust Renner Auto at that point. So Avery Dennison told USPPS it was their intent to turn back the prosecution to USPPS and let them hire their own attorney. And the party agreed. The timing is a little interesting though. I mean the minute you get this notice of disallowance, Avery says okay I'm done. I'm not going to fight to try to get it back and you hand it back to him. It wasn't precisely that. It was in April that the notice of disallowance came. In May, almost right away, they were calling and complaining. They had to wait two months to even answer. Actually they prepared a response to the first office action. Avery Dennison and USPPS agreed that USPPS were going to get their own attorneys. USPPS then asked Avery Dennison if they could use the response that Renner Auto had prepared to file it in response to the first office action. And then they were going to get their own patent attorney. So there was a response to the first office action that was filed. And it was filed by Renner Auto pursuant to the agreement between USPPS and Avery Dennison. There was a final office action that came subsequently. And it was at that point you would ask the question earlier had USPPS complained? There were repeated instances where USPPS was complaining alleging that Avery Dennison... So why did we get... the judge found the trigger date was May of 2003. And the triggering event was the PTO's decision that there's been an abandonment here. Why is that necessarily the trigger for the statute of limitations? I wondered that as well, except maybe it's because that's when the injury occurred. Up to May of 2003, the parties could have filed an appeal, done something to prevent the abandonment of the patent. So the ultimate injury, the loss of the patent applications, occurred on the official abandonment. That's the only thing I saw there. I mean, they clearly had noticed prior to that date that they had... they believed Avery and Renner had wronged them. They had discussions with Avery and Renner and there was discussion about that. And what the Supreme Court in Texas says is that the applicable legal standard in Texas is that the statute of limitations begins to run when the party has actual knowledge of a wrongful injury. As the court explained, after being put on notice of the injury, the alleged harm, and the only injury they allege here is loss of the patent application, but after being put on notice of that, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the statutory period of time. The focus in all of these cases is when did the claimant discover the harm? In all of the cases, that's where the focus really comes back to. For example, in KPMG versus HCH, in the Texas Supreme Court case, where plaintiff had suffered an injury of like $620,000 from the premature sale of bonds, the plaintiff recognized they had had an injury and they filed suit against the bank who sold the bonds within two years. In discovery of that case, they found out that KPMG, their auditors, were also the auditors of the bank and they believed they had a breach of fiduciary duty against KPMG. They filed suit. That was barred because the court said you knew of the injury back at a specific date. Statute of limitations began to run from that date to find out who and why you were injured. And in that case, the court... Isn't that a little odd, though? I mean, aren't we looking at under Fifth Circuit law? I mean, he's alleging fraud or whatever. Yes. It's not... There's a disconnect between the injury and the fraud. I mean, I thought the standard of what we're looking at is when he should have reasonably, with due exercise and due diligence, had discovered the fraud. There's a disconnect between when the timeframe for discovering the fraud and just the arbitrary timeframe of when the injury was final in terms of the monetary damage that he suffered. Right. In the federal Texas Supreme Court case of Little v. Smith, which was a fraud case, and there were several other fraud cases, the court said that fraud does prevent the running of the statute of limitations, but its knowledge of facts that would cause a reasonably prudent person to make inquiry, which if proved or pursued would lead to the discovery of fraud, is, in law, knowledge of the fraud. And again, in a Supreme Court case, F.D. v. Arby, then Justice Owen, in her opinion, said, that with respect to fraud, the reason fraud, the statute of limitations, is delayed in fraud is because it's likely to cover up the injury, and the plaintiff is not likely to discover the injury. So that's why the court in Exxon v. Emerald Oil says, irrespective of any claim of fraud or fraudulent concealment or discovery rule, its knowledge of that actual injury, upon receiving notice of that actual injury, the burden is put on the plaintiff to investigate its claim and to sue, if at all, within the statute of limitations. So, with respect to this case, it's two years for negligence and legal malpractice. It's four years for fraud. They had the time. And as the lower court found, given all of the facts that are set forth in the summary judgment evidence, any reasonable person would have been put on notice that they had an injury, loss of this patent application, and should have taken action to do something about it, because they had already known and believed that it had been wrongfully caused by Avery and Renner, and even accused Avery of engaging in a continuing pattern of misrepresentation and omissions. So, under those circumstances, the district court found as a matter of law that no reasonable person would not have known about their injury, known that it was a wrongful injury, and the statute of limitations began to run in May of 2003, when the injury, when the patent application was abandoned. So, I will reserve my time, Mr. Counsel, unless you have any questions. Good morning, Your Honor. May it please the court, Bob Waters on behalf of Renner Auto. I'll be very brief here. My colleague, Mr. Parkins, has addressed the limitations issue. I believe that establishes that U.S. DPS's claims were barred in their entirety, as correctly found in the summary judgment. Did Renner ever ask Mr. Beasley to file a letter, or to sign a letter waiving the conflict of interest? No such request was ever made, because there was no conflict of interest existing in Renner Auto's view, because Renner Auto was retained by Avery to pursue the patent application. Avery's interests and Beasley's interests, when Renner Auto was hired, were aligned. Did Renner sit down with Mr. Beasley and explain that Avery's interests were what they were pursuing, and that to the extent that Mr. Beasley might have any interest at odds with Avery, that he should get himself counseled? It's not my understanding that that ever took place, Your Honor, because we weren't representing Beasley. It was never Renner Auto's understanding that we were representing Beasley, and therefore had no reason to tell Beasley any more than we would tell anyone else. Doesn't a lawyer have an obligation in circumstances like this to make sure where there is a potential split in loyalties, or a threat, a potential split in loyalties, to make sure that both sides are completely on board with what they're doing? Under these particular facts, Your Honor, I don't believe so, because the e-mails that had been sent back and forth, particularly before the power of attorney was issued, indicated, and I think it's 3, 4, and 5 of our summary judgment motion, that Avery told Mr. Beasley, who, by the way, is not party to this action, party to the USPPS, they didn't even exist at this time, but the e-mail indicated very clearly that our lawyers, Avery's lawyers, would be the ones taking a look at this and pursuing this patent opportunity. Then why was there a fear of malpractice? Why was there a fear of malpractice? I'm sorry, I'm not following the question. Wasn't there information that was disclosed in discovery that indicated that there was at least some reference to a fear of malpractice? There could have been, although I'm not sure what the basis of that fear would have been. In any event, although Renner Auto takes a position that it never represented Beasley in the case and could not have represented USPPS, which is the plaintiff in this case, since USPPS didn't exist at the time that the power of attorney was issued, nonetheless, Beasley, acting through USPPS, has filed a summary judgment evidence indicating that they believed, at least initially, that an attorney-client relationship exists. So there's a back issue. What we're talking about here today are the defenses of limitations and the lack of causation. That's the only thing that really matters for purposes of the summary judgment for those two issues. Summary judgment was not granted on the grounds of no existence of you. Summary judgment was granted on the grounds only of limitations and the lack of causation. As far as the causation is concerned, there's really no question at all here that we have no evidence, no evidence whatsoever, ever proffered by USPPS in this case that but for the misrepresentations that they allege Avery and Renner Auto committed, but for those misrepresentations, they would have hired different counsel. They plead that, and much of the argument that's come forth by USPPS in this brief is an attempt to evade its own pleadings, but they don't have the luxury of doing that. They plead that but for the misrepresentations, they would have retained other counsel. They presented no evidence that they did so, and in fact, the only summary judgment evidence on this point is the evidence that appears in at least three places that they would not have done so. They had the opportunity, clearly, at the time, and this is at Supplemental Appellate Record, pages 200 to 202 of the deposition excerpt from Mr. Lansdale, who was USPPS's attorney on other matters. He testified in his deposition that he specifically advised Mr. Beasley to have his own counsel take a look at these patent materials that had been submitted to Avery Dennison and to Renner Auto and that Mr. Beasley's response was he didn't want to do it because he didn't want to pay to have that done. He would rather Avery pay for the patent prosecution. The second example, and this is seen at pages 216 to 217 of Supplemental Appellate Record, is the July 2002 email in which USPPS advises Avery that they are going to have their own counsel look at the IP issue and they are going to retain counsel. They are going to facilitate communications and transition from Renner Auto onto their own counsel and then, of course, there's a complete failure to follow up. Do they say their own counsel or do they simply refer to new counsel? New counsel. Implying that they thought that Renner was representing them in the first instance. Well, they indicate now that they thought Renner Auto was representing them and yet they knew in May of 2002 that Avery was restricting their access to Renner Auto. In fact, that's one of the reasons why the limitations issue is conclusively established against them because in paragraph 62 of their pleading, which is page 856 of the appellate record, they plead specifically seven items of breach of fiduciary duty. Item number six of the breach of fiduciary duty is the suggestion that Avery Denison wrongfully restricted their access to patent counsel. That was a breach of fiduciary duty. Have you sufficiently finished your answer to Judge O'Malley's question because you exceeded your time? I know. I just wanted to be able to respond. Okay. Yes. Okay. My time is going to come. Yes. Thank you. Is this my time? Yes, sir. Okay. Thank you. I really respect lawyers and I know lawyers are supposed to, they always have to do the best they can for their client. But I'll have to tell you, I'm disappointed that a lawyer would take the position that Renner Auto did not represent Beasley. He's got a power of attorney naming them to prosecute his patent. Not Avery Denison. Mr. Beasley. He's sitting right back there. That's their job. He has Avery Denison sign a letter to him saying, we will assume the responsibility for prosecuting your patent. They keep saying, well, he didn't choose to get a new lawyer. When you brought up the fact of a new lawyer, what new lawyer would they be talking about? They say he never even had a lawyer. They're actually saying he didn't have a lawyer during this patent prosecution. You know what? He really didn't. It's one thing to say he didn't choose to hire a new lawyer. It's another thing, Mr. Beasley, we've done everything we can. We're the greatest lawyers around. We've handled hundreds of these patent applications. You just don't have any hope. Well, that's a lot different story than saying get your own lawyer. I want to play, as a reference, it's not in any of my briefs. It was a supplement. It's an absolutely great case to look at, Exxon v. Emerald Oil. I made, and I don't know if I'm allowed to do this, they mentioned it in a supplementary brief and it was mentioned in argument. They cite it as being a recent Texas Supreme Court case supporting their position. I will leave this with the clerk if you would like to see it. It's Exxon v. Emerald and it is 2011 WL1. Well, you say they cited it in their brief. They filed a supplemental law. But if I might, it's Exxon v. Emerald, 2011 WL1226100. It's a very long opinion, royalty owners, lessees, multiple causes of acts, and a whole lot of negligence and that other, and some fraud. Well, the Texas Supreme Court goes the first 21 pages talking about all of the two-year statute of limitations problems, and they're right. It's always look at the injury. But on page 21, they finally say, unlike most of the other claims of two-year, the statute of limitations for fraud is four years. The statute of limitations for fraud begins to run from the time the party knew of the misrepresentation. Anything else, misrepresentation, not the injury, cites little v. Smith. And then it goes on. The exercise of reasonable diligence would have led to the discovery of the wrongful act, not the injury, not returning phone calls, not doing this and that. So I really think it's a very recent Texas Supreme Court case that clarifies this distinction between injury, two-year statute of limitations, fraud, wrongful conduct, four-year. Causation, very quickly. Their argument, first of all, in Beasley, one, the court found causation, and they looked at it and said the standard was, would Mr. Beasley have fared better with other counsel? And that is the proper standard. The argument here is that the class has got to prove, I would have picked somebody else. It has to prove a non-event. It has to speculate. It would destroy every malpractice case known to mankind. Every malpractice case would then be, the plaintiff has to prove if he had known of the incompetence, if he had known of the conflict, if he had known, he would have gotten into a different lawyer. Well, common sense would tell you he would. But then if he says, I would have done it, well, it's pure speculation. It's not even allowable. We thank both counsels. Thank you very much. Have a nice day.